REDACTED

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                            Plaintiff,<br>  v.<br>FRANCISCO JAVIER PEREZ,<br><br>                           Defendant. | Case No. 11cr2149 BTM<br><br>**ORDER GRANTING MOTION TO DISMISS INDICTMENT DUE TO INVALID DEPORTATION** |

Defendant Francisco Javier Perez ("Defendant") moves to dismiss the Indictment against him on the ground that his April 2011 deportation was invalid. For the reasons discussed below, Defendant's motion to dismiss the Indictment is **GRANTED**.

## I. BACKGROUND

Defendant was born on August 10, 1992, and was brought to the United States in 2000 when he was eight years old. (Def. Decl. ¶ 2.) Defendant lived with his mother and step-father, neither of whom are United States citizens. (Id.) Defendant was educated in the United States and graduated from high school in the United States. (Id.) Defendant has worked in construction with his step-father. (Id.)

Defendant has been in a relationship with Yvette Estrella, a United States citizen, for three years. (Def. Decl. ¶ 3.) According to Defendant, they have discussed marriage. (Id.)

Defendant has had trouble with the law. [

|    |                                                                                                     |
|----|-----------------------------------------------------------------------------------------------------|
| 1  |                                                                                                     |
| 2  |                                                                                                     |
| 3  |                                                                                                     |
| 4  |                                                                                                     |
| 5  |                                   **REDACTED**                                                      |
| 6  |                                                                                                     |
| 7  |                                                                                                     |
| 8  |                                                                                                     |
| 9  |                                                                                                     |
| 10 |           ] On March 29, 2011, Defendant was convicted as an adult for                              |
| 11 | driving without a license and was sentenced to 12 months' probation.                                |
| 12 |      On March 31, 2011, a Notice to Appear ("NTA") was filed against Defendant. The                 |
| 13 | NTA charged Defendant as being removable under 8 U.S.C. § 1182(a)(6)(A)(i) for "being an            |
| 14 | alien present in the United States without being admitted or paroled, or who arrived in the         |
| 15 | United States at any time or place other than as designated by the Attorney General."               |
| 16 |      Defendant appeared before an Immigration Judge ("IJ") on April 21, 2011. Defendant             |
| 17 | was not represented by an attorney. The IJ did not advise Defendant of his eligibility for pre-     |
| 18 | conclusion voluntary departure. The IJ seemed to be sympathetic to Defendant, explaining:           |
| 19 | "I'm at a loss as to what he can apply for. Sir, I don't know what you can apply for is the         |
| 20 | problem. Sir, at this point I'm at a loss as to what you can apply for so I'm gonna order you       |
| 21 | removed to Mexico. It doesn't appear to be anything realistically in terms of your eligibility."    |
| 22 | (Def. Ex. B, pp. 5-6.)                                                                              |
| 23 |      The IJ ordered Defendant removed from the United States, and Defendant stated that             |
| 24 | he did not wish to appeal the IJ's decision. (Def. Ex. B, p. 6.) Defendant was physically           |
| 25 | removed to Mexico on or about April 25, 2011.                                                       |
| 26 |      On April 29, 2011, Defendant was arrested near the Otay Mesa, California Port of               |
| 27 | Entry. On May 26, 2011, a grand jury returned a one-count indictment, charging Defendant            |
| 28 | with being a deportable alien found in the United States, in violation of 8 U.S.C. § 1326(a).       |

## II. **DISCUSSION**

Defendant argues that his April 2011 deportation was invalid. Defendant's primary argument is that his due process rights were violated because the IJ failed to inform him of his eligibility for pre-conclusion voluntary departure under 8 U.S.C. § 1229c(a).[1] As discussed below, the Court finds that Defendant had a plausible claim for relief under 8 U.S.C. § 1229c(a). Therefore, the IJ's failure to inform Defendant of his eligibility for pre-conclusion voluntary departure renders his deportation invalid.

A. <u>Law Governing 1326(d) Collateral Attacks</u>

To sustain a collateral attack under 8 U.S.C. § 1326(d), a defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. <u>United States v. Ubaldo-Figueroa</u>, 364 F.3d 1047, 1048 (9th Cir. 2004). An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. <u>Id.</u> When the alleged defect in the deportation proceedings consists of the IJ's failure to inform the defendant regarding his possible eligibility for relief from deportation, in order to establish prejudice, the defendant must only show that he had a plausible ground for relief from deportation. <u>United States v. Arce-Hernandez</u>, 163 F.3d 559, 563 (9th Cir. 1998).

An alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order. <u>United States v. Arrieta</u>, 224 F.3d 1076, 1079 (9th Cir. 2000).

---

[1] In his papers, Defendant also argues that the IJ failed to inform him of his eligibility for withholding of removal under the Convention Against Torture ("CAT"). However, it does not appear that Defendant qualified for such relief. To establish eligibility for relief under CAT, the petitioner must demonstrate a greater than fifty percent chance that he will be tortured if removed. <u>Hamoui v. Ashcroft</u>, 389 F.3d 821, 827 (9th Cir. 2004). In addition, the torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Defendant's concern that his tattoos would get him into gang trouble in Mexico does not support a conclusion that Defendant more likely than not would be tortured by or with the consent of public officials. (Def. Ex. B, p. 5.)

1  However, the exhaustion requirement of 8 U.S.C. 1326(d) "cannot bar collateral review of
2  a deportation proceeding when the waiver of right to an administrative appeal did not
3  comport with due process." United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir.
4  2001). "[A] waiver is not considered and intelligent when the record contains an inference
5  that the petitioner is eligible for relief from deportation, but the Immigration Judge fails to
6  advise the alien of this possibility and give him the opportunity to develop the issue." Id. at
7  1182 (internal quotation marks omitted).

9  B.  Defendant's Eligibility for Relief and Plausible Claim
10        Under 8 U.S.C. § 1229c(a), "[t]he Attorney General may permit an alien voluntarily to
11 depart the United States at the alien's own expense . . . in lieu of being subject to
12 proceedings under Section 1229a of this title or prior to the completion of such proceedings,
13 if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this
14 title." Voluntary departure is a form of discretionary relief. Tovar-Landin v. Ashcroft, 361
15 F.3d 1164, 1166 (9th Cir. 2004).
16        The Government does not dispute that Defendant did not have an "aggravated felony"
17 conviction and was *eligible* for pre-conclusion voluntary departure. See 8 U.S.C. §
18 1229c(a)(1). Because Defendant was eligible for pre-conclusion voluntary departure, the IJ
19 violated Defendant's due process rights by failing to inform him of his such relief. United
20 States v. Ortiz-Lopez, 385 F.3d 1202, 1204 (9th Cir. 2004).
21        The focus of the parties' disagreement is on whether Defendant suffered *prejudice*
22 from the defects in his removal proceedings. The Government argues that given the
23 adverse factors weighing against discretionary relief, Defendant suffered no prejudice.
24 Defendant, on the other hand, argues that he had a plausible claim given the length of time
25 he had lived in the United States and his family ties in the country. The Court agrees with
26 Defendant.
27        In a case with similar facts, a judge in this district held that the defendant, Alcazar-
28 Bustos, did not have a plausible claim for voluntary departure given his criminal history.

1  United States v. Alcazar-Bustos, 2009 WL 133785 (S.D. Cal. Apr. 16, 2009), rev'd, 2010 WL
2  2284120 (9th Cir. June 7, 2010).  Alcazar-Bustos [
3              **REDACTED**                                                            ].  He had also
4  received a three-year sentence for being a minor in possession of a concealed weapon and
5  an eight-month sentence for unlawful possession of a firearm while on probation.  A state
6  probation report indicated that he was an admitted gang member and had been so for the
7  preceding four years.  The district court concluded that although Alcazar-Bustos had resided
8  in the United States for a lengthy period of time and had a U.S. citizen wife and child, the
9  defendant's "criminal history and association with firearms would have been too great for the
10 Immigration Judge to allow the Defendant to voluntary depart."

11         On appeal, the Ninth Circuit reversed.  United States v. Alcazar-Bustos, 382 Fed.
12 Appx. 568, 2010 WL 2284120 (9th Cir. June 7, 2010).  The Ninth Circuit held that although
13 Alcazar-Bustos's criminal convictions, prior drug use, and sporadic work history militated
14 against pre-conclusion voluntary departure, his near-lifetime residence in the country and
15 his family members' citizenship weighed in favor of relief.  Considering both the positive and
16 adverse equities, the Ninth Circuit concluded that it was plausible that an IJ would have
17 granted Alcazar-Bustos pre-conclusion voluntary departure and that Alcazar-Bustos was
18 therefore prejudiced by the IJ's conclusion that he was statutorily ineligible for this relief.

19         This case is quite similar to Alcazar-Bustos.  Defendant came to the United States at
20 a young age and has lived in the United States for most of his life.  Although his mother and
21 step-father are not United States citizens, his relationship with them still qualifies as a
22 favorable factor.  See Campos-Granillo v. INS, 12 F.3d 849, 852 n. 8 (9th Cir. 1993) (listing
23 "family ties within the United States" as a favorable factor).  Defendant also has a United
24 States citizen girlfriend.  In addition, Defendant has a high school degree.

25         [        **REDACTED**              ] an adult conviction for driving without a
26 license, and appears to have been involved in a street gang.  However, Defendant's criminal
27 history is less serious than Alcazar-Bustos's.  Alcazar-Bustos received a three-year sentence
28 for being a minor in possession of a concealed weapon and subsequently received an eight-

month sentence for unlawful possession of a firearm while on probation. According to a probation report, Alcazar-Bustos was an admitted gang member.

Comparing the equities of this case and <u>Alcazar-Bustos</u>, the Court concludes that Defendant had a plausible claim for pre-conclusion voluntary departure. The IJ's failure to inform Defendant of his eligibility for such relief rendered the underlying deportation order fundamentally unfair, deprived Defendant of the opportunity for judicial review on the matter, and invalidated Defendant's waiver of appeal. Therefore, Defendant is entitled to a dismissal of the Indictment.

### III. <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that Defendant's April 2011 deportation was invalid and **GRANTS** Defendant's motion to dismiss the Indictment. The Indictment is **DISMISSED**

**IT IS SO ORDERED.**

DATED: August 5, 2011

*/s/ Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge